UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JACK RUTIGLIANO,<br><br>    Petitioner,<br><br>    v.<br><br>M.E. SPEARMAN, Warden,<br><br>    Respondent. | Case No. CV 17-00419-DFM<br><br>OPINION AND ORDER |

# I.
# BACKGROUND

**A.** **Procedural History**

In 2014, a jury found Jack Rutigliano ("Petitioner") guilty of intimidating a witness, corporal injury on a girlfriend resulting in a traumatic condition, and felony assault. See Dkt. 11, Notice of Lodging, Lodged Document ("LD") 1, Clerk's Transcript ("CT") 206-08. Petitioner appealed his conviction to the California Court of Appeal, arguing that the trial court erred in using CALCRIM No. 318 to instruct the jury on how to weigh a witness's out-of-court pretrial statements. See LD 3. On May 18, 2016, the state appellate court rejected Petitioner's claim in a written opinion on the merits.

See LD 6. On June 20, 2016, Petitioner sought review of his instructional error claim from the California Supreme Court, which summarily denied that petition for review on July 27, 2016. See LD 7-8.

On January 18, 2017, Petitioner filed the instant petition alleging that the state trial court's use of CALCRIM No. 318 to instruct the jury violated his due process rights. Dkt. 1 ("Petition") at 5.[1] Respondent filed an answer responding to the merits of the Petition. See Dkt. 10 ("Answer"). Petitioner has not filed a traverse.

**B.    Summary of Evidence Presented at Trial**

The underlying facts are taken from the California Court of Appeal opinion. Unless rebutted by clear and convincing evidence, these facts are presumed correct. See Crittenden v. Chappell, 804 F.3d 998, 1011 (9th Cir. 2015) (finding that state court's factual findings are presumed correct unless "overcome . . . by clear and convincing evidence"); 28 U.S.C. § 2254(e)(1).

> On May 7, 2014, [Petitioner] broke into Angela H.'s house at five in the morning and choked her while she was asleep. [Petitioner], an ex-boyfriend, attempted to strangle Angela, grabbed her arms, and threw her on the floor. Angela tried to call 911 but [Petitioner] grabbed the cell phone and smashed it.
>
> Angela's 16-year-old daughter saw [Petitioner] choking Angela and called 911. Angela's 13-year-old son entered the bedroom with a bat and chased [Petitioner] out of the house.
>
> Los Angeles County Deputy Sheriff Christopher Lee responded to the 911 call and saw finger marks on Angela's neck, red marks on her arms, and redness and a small cut on her ankle.

---

[1] With the exception of the Clerk's and Reporter's Transcripts, all page citations to electronically-filed documents use the CM/ECF pagination.

> Angela said that [Petitioner] tried to strangle her, grabbed her arms and threw her to the ground, and smashed her cell phone.
>
> At trial, Angela recanted and testified that nothing physical happened. Angela said that she called the police because she was frustrated about her relationship with [Petitioner] and thought the police would ask him to leave. Audio tapes were played to the jury in which [Petitioner] called Angela from jail and discussed how Angela and the children should change their testimony.

LD 11 at 2.

## II.
## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Overall, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). AEDPA presents a "'difficult to meet' and 'highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citations omitted). The prisoner

bears the burden to show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, a state-court "determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness" of that ruling. Id. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Federal habeas corpus review therefore serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (citation omitted).

Here, Petitioner raised the claims presented in the Petition on direct appeal, and those claims were rejected by the California Court of Appeal in a reasoned decision. See LD 6. The California Supreme Court then summarily denied Petitioner's petition for review. See LD 8. For purposes of applying the AEDPA standard of review, the California Court of Appeal decision on direct appeal constitutes the relevant state court adjudication on the merits. See Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013) (noting that federal habeas court "look[s] through" summary denial of claim to last reasoned decision from the state courts to address the claim).

## III.
## DISCUSSION

The trial court instructed the jury with CALCRIM No. 318 as follows: "You heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable; [¶] AND [¶] 2. As evidence that the information in those earlier statements is true." 3 RT 1026. The California Court of Appeal rejected Petitioner's argument that this instruction violated Petitioner's due-process

rights by imposing a mandatory presumption that Angela's out-of-court statements were true. See LD 6 at 2-5. Noting that this argument had been rejected by every court that has considered it, the state appellate court noted that by using the term "may," the instruction did not require the jury to credit Angela's earlier statements. See id. at 2-3. The court thus rejected Petitioner's argument that the instruction lessened the prosecution's burden of proof by compelling the jury to accept Angela's statements as true. See id.

The California Court of Appeal added that CALCRIM No. 318 "does not require the jury to credit the earlier statement," nor does it "lesse[n] the prosecution's standard of proof or compe[l] the jury to accept an out-of-court statement as true." Id. at 3. "Simply stated, CALCRIM [No.] 318 instructs that the jury can believe a witness's out-of-court statement to be true if the jury so chooses. It is a correct statement of the law and is clarified by the other instructions informing the jury of its prerogative to ignore any evidence found to be untrustworthy." Id. at 4 (referencing CALCRIM No. 226, which was also read and given to the jury, see 3 RT 1021-23; CT 174-75). As a final matter, the state appellate court noted that any "alleged error in giving CALCRIM [No.] 318 was harmless when considered in the context of the other instructions and overwhelming evidence that [Petitioner] broke into the house and inflicted corporal injury on the victim." Id. at 5.

**C.  Analysis**

The issue of whether a jury instruction violates state law generally is not a federal question or a proper subject for habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To show a violation of due process, the petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction was fundamentally unfair. See id. at 72. The challenged jury instructions "must be considered in the context of the instructions as a whole and the trial record." Id.

A jury instruction violates due process if it fails to give effect to the requirement that the prosecution must prove every element of the offense. See Middleton v. McNeil, 541 U.S. 433, 437 (2004). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Id. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Even if it is determined that the instruction violated the petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional instruction had a "substantial and injurious effect or influence" on the jury's verdict and thereby resulted in actual prejudice. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The state appellate court reasonably determined that the state court properly instructed the jury with CALCRIM No. 318. From the text of the instruction, the jury could reasonably infer that it need not—but "may"—consider the truthfulness of a witness's pretrial statement "if" it decided that the witness made those statements. See 3 RT 1026. The California Court of Appeal acknowledged the same by noting that "the instruction does not require the jury to credit the earlier statement" but still "allow[s] it to do so." LD 6 at 2. Applying a "commonsense reading," the state appellate court reasonably concluded that CALCRIM No. 318 does not "lesse[n] the prosecution's standard of proof" because, even with the instruction, the jury may still discredit the witness's pretrial statements. Id. at 3. The state appellate court further clarified that the correctness of jury instructions should not be determined from consideration of "parts of an instruction or from a single instruction considered in isolation," but from the "entire charge of the trial court." Id. Here, the trial court additionally instructed the jury that it could

6

| 1 | freely ignore out-of-court statements that it found to be untrustworthy. See id.
| 2 | at 3-4 (referencing CALCRIM No. 226 ("You may believe all, part, or none of
| 3 | any witness's testimony.")); see also id. at 4 ("CALCRIM [No.] 318, when
| 4 | considered in conjunction with the other instructions negates the possibility,
| 5 | imagined by [Petitioner], that the jury would believe itself bound to rely on
| 6 | out-of-court statements that it found noncredible." (internal quotations and
| 7 | citations omitted)); 3 RT 1021-23.

Regardless, the allegedly unconstitutional instruction did not so infect the trial such that the resulting conviction was fundamentally unfair—especially when considered within the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. Neither did it have a "substantial and injurious effect or influence" on the verdict nor result in any actual prejudice. Brecht, 507 U.S. at 637. As the state appellate court noted, "overwhelming evidence"—including testimony from the responding officers, a probation officer, and the victim's daughter, son, and mother—support the jury's findings. LD 6 at 5; see also 2 RT 820-36, 847-50, 857-58; 3 RT 905-11, 913-16, 930-38, 940-41, 947-52, 957-59, 962-74.

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that the Petition is DENIED. Let judgment be entered dismissing this action with prejudice.

Dated: June 18, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge